**LEWIS BRISBOIS BISGAARD & SMITH LLP**
LYNN L. KRIEGER, SB# 209592
MATTHEW W.J. JOHNSTON, SB# 300222
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

Attorneys for Defendant THOAI VAN NGUYEN

*Attorneys for Plaintiffs Listed on Next Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SORIHIN, aka SORIHIN SORIHIN, an individual; and ABDUL FATAH, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> THOAI VAN NGUYEN, an individual doing business as SEA QUEEN II, <br><br> Defendant. <br> _____ <br><br> AND RELATED CROSS-ACTIONS | CASE NO. 3:16-cv-05422 JST <br><br> JOINT CASE MANAGEMENT STATEMENT/RULE 26(f) REPORT <br><br><br> **CMC Date: March 29, 2017** <br> **Time: 2:00 p.m.** <br> **Courtroom: 9, 19th Floor** |

Carole Vigne, State Bar No. 251829
Mana Barari, State Bar No. 275328
LEGAL AID AT WORK
180 Montgomery Street, Suite 600
San Francisco, CA  94104
Telephone:  (415) 864-8848
Facsimile:  (415) 593-0096
Emails:  cvigne@legalaidatwork.org, mbarari@legalaidatwork.org

Agnieszka Fryszman, State Bar No. 459208 *admitted pro hac vice*
Alysson Ford Ouoba, State Bar No. 5039474 *admitted pro hac vice*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave., N.W.
East Tower, Suite 500
Washington, District of Columbia 20005
Telephone:  (202) 408-4600
Facsimile:  (202) 408-4699
Email:  afryszman@cohenmilstein.com

Yenny Teng-Lee, State Bar No. 297021
THE LAW OFFICE OF YENNY TENG-LEE
1630 S. Delaware St., No. 25414
San Mateo, CA 94402
Telephone:  (650) 619-0042
Email:  yenny@teng-leelaw.com

Attorneys for Plaintiffs

Pursuant to Federal Rule of Civil Procedure 16 and 26 and Civil Local Rules 16-9 and 10, and in accordance with the Standing Order for Case Management Statements applicable in this District, Plaintiffs/Counter-Defendants SORIHIN SORIHIN and ABDUL FATAH ("Plaintiffs") and Defendant/Counter-Claimants THOAI VAN NGUYEN ("Defendant") jointly submit this Case Management Statement and respectfully request that the Court adopt it as its initial Case Management Order in this case.

### 1. Jurisdiction and Service

Plaintiffs' Complaint asserts claims for relief under 18 U.S.C. § 1595, the Trafficking Victims Protection Act, and 28 U.S.C. § 1350, the Alien Tort Statue. Therefore, this Court has subject matter jurisdiction under 28 U.S.C. § 1331. No issues exist regarding subject matter jurisdiction, personal jurisdiction or venue. There are no remaining parties to be served.

### 2. Facts

**Plaintiffs' description of facts**

Defendant Nguyen sought inexpensive labor for his fishing vessel and approached a self-described middleman and known supplier of cheap labor. Compl. ¶¶ 33- 35.

Plaintiffs Sorihin and Abdul Fatah had left their homes in Indonesia and paid large recruitment fees to obtain jobs as commercial fishermen. Id. ¶¶ 39, 40, 41, 43, 44, 45, 80. But instead of the promised jobs at the promised wage on the promised vessel, the men were taken to sea and, while in the middle of the Pacific Ocean, transferred against their will to Defendant Nguyen's fishing vessel, the Sea Queen II. Id. ¶¶ 56, 57. On the Sea Queen II, Defendant required the Plaintiffs to perform dangerous work for up to 20 hours per day, fishing for tuna, swordfish and other seafood. Id. ¶¶ 1, 59, 60. Plaintiffs endured harsh and often unsafe conditions, and were not provided with adequate safety gear or adequate medical treatment for the injuries they suffered. Defendant verbally harassed Plaintiffs, regularly calling them derogatory names. Id. ¶ 63.

For their work, Plaintiffs were paid less than promised in their written contract. When

Plaintiff Sorihin confronted Defendant about the contractual bonus that was due to Plaintiffs and showed him the contract, Defendant claimed he had not agreed to pay them a bonus and was not bound by their contract. Id. ¶ 78.

When Plaintiff Sorihin asked to leave the boat, Defendant told the men that they could not leave unless they paid Defendant $6,000, in effect requiring Plaintiffs to buy their freedom. Id. ¶¶ 64, 87, 91. Defendant knew that Plaintiffs did not have the money to pay him $6,000, on top of the separate travel expenses, and would have to continue providing labor to him. Compl. ¶¶ 64, 87, 91. In addition, Plaintiffs were faced with an additional financial penalty, a termination penalty due to the labor recruiter that they could not afford to repay without their anticipated wages. Compl. ¶¶ 48, 65, 88. Plaintiffs were isolated on the fishing vessel. They did not know anyone in the United States who could assist them, were further isolated because they did not speak English; Plaintiff Sorihin only spoke sufficient English to have basic communications with Defendant. Compl. ¶¶ 86, 98. Plaintiffs were overworked and exhausted, and did not have enough food to eat. Defendant's treatment of Plaintiffs, and utter disregard for their safety and well-being, further reinforced Plaintiffs' vulnerabilities. Id. ¶¶ 70, 74.

Nonetheless, after almost eight months of servitude and afraid for their lives, Plaintiffs escaped while docked in San Francisco. Plaintiffs eventually found their way to a shelter, where they were identified as victims of human trafficking and referred to appropriate services.

Plaintiffs were granted visas designated for victims of human trafficking. Under federal law, such visas are only available to an individual who can prove through sufficient evidence that he "is or has been a victim of a severe form of trafficking in persons." 8 U.S.C. § 1101(a)(15)(T)(i)(I); 8 C.F.R. § 214.11(d)(2)(iv) & (f).

Each year, the United States Department of State compiles a Trafficking in Persons Report with data from U.S. embassies, government officials, organizations, and news sources worldwide. The Trafficking in Persons Report has repeatedly focused on the problem of human trafficking and

forced labor on commercial fishing vessels. In its 2012 Trafficking in Persons Report, the United States Department of State noted that "For years, the fishing industry has targeted vulnerable populations" and provided this example: "an Indonesian recruiter persuades a worker in his home country to sign a contract to work aboard one of the vessels. Once on the boats, some victims are forced by senior crew employed by fishing corporations to work 18 or more hours per day, threatened, prevented from leaving the boat, and in some instances were exposed to physical abuse…" U.S. Dep't of State, Trafficking in Persons Report 38 (June 2012).

An analysis by the International Labour Organization (ILO) reports that migrant workers from developing states are increasingly used to crew fishing vessels. Long-distance fishing is labor intensive and crew wages can account for between 30 and 50 percent of operating costs. International Labour Organization. Caught At Sea: Forced Labor And Trafficking In Fisheries, 5 (2013). The use of low-wage migrant workers can cut these costs considerably and give fishing operators a competitive advantage. As a result, trafficking and forced labor are becoming increasingly common in the fishing industry. Plaintiffs' experience fits into this sadly common pattern.

Plaintiffs allege that they were compelled to labor against their will. Compl. ¶¶ 1, 7. Plaintiff must show their labor was obtained by serious harm or threats of serious harm; abuse or threatened abuse of the law or legal process; force or threats of force; physical restraint; or a scheme, plan, or pattern intended to cause a person to believe he or another person would suffer serious harm. 18 U.S.C §§ 1589, 1590. Deception regarding the terms and conditions of employment, the serious harm of a financial penalty, lack of control over identity documents, transfer to a foreign area where the victim does not speak the language or understand the local laws and customs and abusive conditions—all of these things are hallmarks of trafficking in persons and are recognized under governing law.

Defendant argues that his conduct was either justified or required by applicable U.S.

immigration laws. Defendant has stated that he collected Plaintiffs' passports and Seamen's books on advice of Customs and Border Protection ("CBP") to facilitate inspection by government agents. *See* Answer at ¶ 62. Defendant will also argue that Plaintiffs could not leave the dock in Honolulu, or the vessel in San Francisco, due to immigration laws because they were not permitted entry onto U.S. soil. *See* Answer at ¶ 76. Defendant admits that he told Plaintiffs that they could not leave the vessel because they did not have authorization to be on U.S. soil. *See* Answer at ¶ 85.

Plaintiffs' trafficking claims do not rely upon these assertions  Instead, Plaintiffs' primary assertions are that they were misled about the wages they would receive, they were mistreated and exploited by Defendant on board the Sea Queen II, and they were not permitted to leave when they told Defendant they wanted to. Defendant's reliance on immigration policies fails to reach the essence of Plaintiffs' forced labor claims. Moreover, Defendant's argument does not present an adequate defense. Courts have found that defendants do not have discretion to use those threats of immigration consequences towards coercive ends. *See, e.g., United States v. Calimlim*, 538 F.3d 706, 711 (7th Cir. 2008) (where defendants argued that their abuse of law was not actually an abuse because plaintiff was in the U.S. illegally and was thus subject to deportation, the court found "their 'warnings' about the consequences were directed to an end different from those envisioned by the law and were thus an abuse of the legal process"); *see also United States v. Dann*, 652 F.3d at 1173.

**<u>Defendant's description of facts</u>**

Plaintiffs entered into employment contracts with an Indonesian company called PT Shilla. Both plaintiffs had previous experience and/or training for fishing in international waters. They agreed to come to the United States to fish on a fishing vessel for two years. Fishing in the United States is a heavily regulated industry. In particular, boats are inspected by the Coast Guard and those fishing for tuna and swordfish, as the SEA QUEEN II was, are required to carry an observer

from the National Marine Fisheries program – often a marine biologist – who lives on board the vessel with the crew. The observer monitors fishing operations, counts each species of fish caught, and reports on all conditions observed on the vessel, including conditions relating to the crew.

Defendant is an elderly man who came to the United States from Vietnam around the time of the Vietnam War. His livelihood is fishing, which he has done from his fishing boat the SEA QUEEN II for many years. These plaintiffs were assigned to the SEA QUEEN II and arrived on board in September 2007 pursuant to a federal statute that allows non-US citizens like plaintiffs to work in US waters without formal work visas (46 U.S.C. § 8103(i)(3)). Customs and Border Protection (CBP) agents inspect vessels with foreign crew working under this statute, every time the boat comes to port and every time the boat leaves. The CBP instructs the captains of vessels with foreign crew on board, to collect the passports of the foreign crew in order to prevent non-citizens from doing what the plaintiffs did here and at each inspection, ensures that the passports of the crew are valid and correspond with the crew on board.  The CBP also issues a detain order to the crewmembers when they board the vessel, ordering that the crew may not leave the vessel. CBP agents instruct the crew and the captains to ensure the crew understood that they are not able to leave the vessel.

After several months of work aboard the SEA QUEEN II, plaintiffs approached defendant and told him they were unhappy aboard the SEA QUEEN II and that they wanted to go home. The plaintiffs knew that they were obligated to pay for their own travel expenses if they chose to leave before expiration of their contract, and defendant discussed travel costs at that time. .

Plaintiffs did not approach defendant again after this conversation, but then, in April of 2010, they walked off the SEA QUEEN II while it was docked in San Francisco. Defendant immediately notified the CBP office as he was required to do and never heard from plaintiffs again. .

Seven years later, in September 2017, while defendant was attempting to secure a business

loan, he was informed that an article was published, reporting that he had been sued by plaintiffs, who were accusing him of human trafficking. As a result of the article and statement made in that article and others, defendant lost business.

Defendant denies all allegations that he participated in a human trafficking scheme or that that he violated the Alien Tort Claims Act.

3. **Legal Issues**

Plaintiffs filed suit under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595, and the Alien Tort Statute, 28 U.S.C. § 1350 on September 22, 2016. Defendant filed an Answer on November 14, 2016 and an Amended Answer on December 28, 2016.

Plaintiffs state that there are no legal issues pertaining to Plaintiffs' claims currently awaiting the Court's resolution. Since the Defendant did not move to dismiss Plaintiffs' claims, the case has proceeded directly to discovery. At trial or on summary judgment Plaintiffs expect to be able to prove that Defendant is liable under the TVPRA and the ATS.

Defendant contests liability and Plaintiffs' damages and expects to show at trial, summary judgment or on a motion on the pleadings, that under these facts, the statutes under which the plaintiffs were working, and under the direction of government agencies, defendant's actions did not constitute violations of the TVPRA or the ATS.

Defendant has asserted counterclaims for trade libel and defamation against Plaintiffs. Defendant's position is that these claims are based on statements that Plaintiffs allegedly made to the Associated Press. Plaintiffs' position is that the statements are either admitted by Defendant to be true, non-actionable opinion, or are protected under California law. The motion to dismiss Defendant's counterclaims is fully briefed and awaiting the Court's ruling.

4. **Motions**

Plaintiffs filed a motion to dismiss defendant's counterclaims for defamation; defendants filed a motion to amend his counterclaims for defamation. Plaintiffs opposed the motion to amend

on the grounds that the proposed amendment was futile. Both claims are pending before the Court.

5. **Amendment of Pleadings**

Plaintiffs may consider amending their complaint to include new claim(s). The parties propose the date 90 days before the Pretrial Conference as the deadline for amending the pleadings.

6. **Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, and have discussed this matter in a Rule 26(f) conference. The parties do not believe a stipulated e-discovery order is required.  The parties are not aware of any other particular ESI issues that may arise in this case, but will address those to the Court if they do arise and cannot be resolved by the parties.

7. **Disclosures**

The parties exchanged initial disclosures on February 8, 2017.

8. **Discovery**

Discovery recently was served by defendant however the parties are mutually discussing the pace of discovery in light of attempts to engage in voluntary exchanges of information and early mediations.  The parties believe that other than these considerations, discovery may and should proceed in the ordinary course of litigation pursuant to the Federal Rules of Civil Procedure without modification.

9. **Class Actions**

This proceeding is not a class action.

10. **Related Cases**

There are no related cases.

11. **Relief**

Plaintiffs contend that they are entitled to monetary damages, including fees and costs

paid, debts incurred, and compensation promised but not paid. They also seek consequential damages including the loss of assets and of educational and business opportunities. Plaintiffs also seek damages from mental anguish and pain and suffering from being trafficked and forced to labor against their will. They also seek punitive damages and reasonable attorneys' fees and costs.

Defendant contests all of the relief sought by Plaintiffs and counterclaimed for damages associated with defamation. Plaintiff's motion to dismiss defendant's defamation claims, and defendant's motion to amend his defamation claims are pending orders from the Court.

### 12. Settlement and ADR

The parties engaged in an early pre-mediation session with counsel and neutral, Howard Herman on March 16, 2017. The parties are currently attempting to schedule another mediation session with the parties to occur in April or May 2017.

### 13. Consent to Magistrate Judge for All Purposes

Defendant declined the Magistrate Judge for conducting all proceedings including trial and entry of judgment.

### 14. Other References

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

### 15. Narrowing of Issues

At this time, the parties have engaged in and continue to engage in, informal attempts to narrow issues with the assistance of neutral Howard Herman.

### 16. Expedited Trial Procedure

At this time, the parties do not believe this case should be subject to an expedited schedule but should be governed by the applicable Federal Rules of Civil Procedure and Local Civil Rules.

//

//

### 17. Scheduling

The Parties propose the following dates:

| EVENT | DEADLINE |
|---|---|
| Rule 26(a)(1) disclosures | 02/08/17 |
| Fact Discovery Cut-off | 01/19/18 |
| Rule 26(a)(2) Designation of Experts on Issues for which Party Bears Burden of Proof | 03/16/18 |
| Designation of Rebuttal Experts | 04/20/18 |
| Expert Discovery Cut-Off | 05/18/18 |
| Last day to file Motions for Summary Judgment | 06/15/18 |
| Final pre-trial conference | 07/20/18 |
| Trial commences | 08/17/18 |

### 18. Trial

Both parties request a trial by jury. The parties presently anticipate that trial will consume approximately 10 (ten) court days.

### 19. Disclosure of Non-Party Interested Entities or Persons

There are no non-party interested entities or persons that need to be identified by either party accordance with Civil Local Rule 3-15.

### 20. Professional Conduct

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### 21. Other Matters That May Facilitate Disposition

The parties are not presently aware of any other matters that could facilitate the just, speedy and inexpensive disposition of this case.

DATED: March 20, 2017                LEWIS BRISBOIS BISGAARD & SMITH LLP

By:      /s/ Lynn L. Krieger
Lynn L. Krieger
Matthew W. J. Johnston
Attorneys for Defendant THOAI VAN NGUYEN

DATED: March 20, 2017                LEGAL AID AT WORK

By:      /s/ Mana Barari
Mana Barari
Carole Vigne
Attorneys for Plaintiffs

Agnieszka Fryszman
COHEN MILSTEIN SELLERS & TOLL PLLC

Yenny Teng-Lee
THE LAW OFFICE OF YENNY TENG-LEE
*Attorneys for Plaintiffs*

## ATTESTATION OF E-FILED SIGNATURE

I, Lynn L. Krieger, am the ECF User whose ID and password are being used to file this document. Pursuant to Local Rule 5-1(i)(3) and General Order No. 45 X(B), I attest that Mana Barari has approved this document and consents to its filing in this action.

DATED: March 20, 2017                    LEWIS BRISBOIS BISGAARD & SMITH LLP


By:   /s/ Lynn L. Krieger
      Lynn L. Krieger
      Attorneys for Defendant THOAI VAN NGUYEN